Rhett D. Klok, Esq. (SC Bar Number 69876)
   (*Pro Hac Vice* Application Pending)
KLOK LAW FIRM, LLC
1002 Anna Knapp Blvd., Suite 103
Mount Pleasant, SC 29464
Tel: (843) 216-8860
Fax: (843) 375-9028
Email: rklok@kloklaw.com

Peter T. Haven, Esq. (CA Bar Number 175048)
BARTSCH & HAVEN
317 Rosecrans Avenue
Manhattan Beach, California 90266
Tel: (310) 939-1098
Fax: (310) 546-4033
Email: peter@havenlaw.com

Attorneys for Plaintiff RICHARD FUTCH

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

RICHARD FUTCH,

      Plaintiff,

vs.

ABC STUDIOS; TOUCHSTONE
TELEVISION PRODUCTIONS, LLC;
THE WALT DISNEY COMPANY; AND
DOES 1 – 10, INCLUSIVE;

      Defendants.

Case No.:

**CV14-02854** -MWF(FFMx)

COMPLAINT FOR VIOLATION OF
AGE DISCRIMINATION IN
EMPLOYMENT ACT, 29 U.S.C.
SECTIONS 621 *ET SEQ.*

DEMAND FOR JURY TRIAL.

Plaintiff Richard Futch, for his Complaint herein, alleges as follows:

COMPLAINT FOR VIOLATION OF AGE DISCRIMINATION IN EMPLOYMENT ACT
- 1 -

1.     This is an action for damages against Defendants ABC Studios, formerly doing business as Touchstone Television Productions, LLC, and The Walt Disney Company, for discriminatory treatment and wrongful termination in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* ("ADEA") and parallel South Carolina and California law.

The Parties

2.     Plaintiff Richard Futch, is and was at all times relevant herein, a citizen of the United States and a resident of Mount Pleasant, County of Charleston, State of South Carolina.

3.     On information and belief, Defendant ABC Studios ("ABC") is an entity of unknown form with a principal place of business at 500 South Buena Vista Street, Burbank, California 91521.  Defendant Touchstone Television Productions, LLC ("Touchstone"), is an active entity with its principal place of business at 500 South Buena Vista Street, Burbank California 91521.  On information and belief, ABC previously did business as Touchstone.

4.     Defendant The Walt Disney Company ("Walt Disney") is an active entity with its principal place of business at 500 South Buena Vista Street, Burbank California 91521.

5.     The true names and capacities, whether individual, corporate, association or otherwise of Defendants DOES 1 through 10, inclusive, are unknown to Plaintiff who sues these Defendants by such fictitious names. Plaintiffs will seek leave to amend this Complaint to show the true names and capacity of these Defendants when they have been ascertained.  Each of the

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

fictitiously named Defendants is responsible in some manner for the conduct or liabilities alleged herein.

6.    ABC, Touchstone, Walt Disney, and Does 1 through 10 (collectively "Defendants") are employers within the meaning of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq. ("ADEA") and parallel South Carolina and California law.

7.    Upon information and belief, at all times herein relevant the Defendants have been authorized to conduct business in the States of California and South Carolina.

Jurisdiction and Venue

8.    This Court has jurisdiction over this action under 29 U.S.C. §§ 621 *et seq.*, which presents <u>federal questions</u> and supplemental jurisdiction under parallel California and South Carolina law.  Additionally, diversity jurisdiction exists in that the Defendants are business entities which have their principal place of business in Burbank, California, and Plaintiff is a resident of Mount Pleasant, South Carolina, and the amount in controversy exceeds $75,000. The Plaintiff and the Defendants are residents of different states and there is complete <u>diversity</u>.

9.    Plaintiff filed a timely charge of discrimination against Defendant Touchstone before the EEOC Atlanta District Office responsible for administering claims in South Carolina.  Plaintiff received a notice of right to sue from the EEOC on January 13, 2014.  This suit is filed within the 90 day period indicated for bringing suit in Federal Court.

///

## Factual Allegations

10.     Plaintiff Richard Futch ("Plaintiff"), who was born on September 27, 1943, is a Casting Director who has been working in the entertainment industry for over 30 years covering commercials, Broadway theater, regional theater, and films.

11.     That Plaintiff is over the age of 40 years and is a member of a protected class by age classification under ADEA and parallel California and South Carolina law.

12.     In or around August 15, 2006, Plaintiff was approached by Neil Strum of Touchstone whereupon the Plaintiff was hired by Touchstone Television in a deal memorandum to be the Casting Director for the Pilot of a T.V. Series "Army Wives."

13.     Plaintiff's employment relationship with Touchstone (later ABC) lasted through 104 episodes and 6 successful seasons till the date Plaintiff was wrongfully terminated or alternatively discriminated by his employer due to Plaintiff's age.

14.     As the Casting Director, Plaintiff was in charge of the Casting Department for the run of the series and performed his job expectations.

15.     As Casting Director, Plaintiff's responsibilities as defined in pertinent part by his initial services agreement dated August 15, 2006, included as follows:

"Artist's services hereunder will be those customarily rendered by

casting directors in the motion picture and television industry,

including without limitation the following: …ix) if Touchstone

COMPLAINT FOR VIOLATION OF AGE DISCRIMINATION IN EMPLOYMENT ACT

- 4 -

employs an assistant for Artist, supervising the assistant and verifying timesheets (including hours worked) submitted by such  assistant to Touchstone.

(*See* Exhibit 1, "Army Wives"- Richard Futch- Casting Services, August 9, 2006).

16.     On May 15, 2009, Matthew Sefick (DOB: 03/18/1981) was hired as a Casting Associate by the Plaintiff.  Prior to this time frame, Mr. Sefick was working as a Production Secretary in the Army Wives production department.

17.     Mr. Sefick is under the age of 40.

18.     As Casting Director, Plaintiff was authorized to hire staff in the casting department.

19.     Over time, Plaintiff hired and terminated assistants/associates in his department, and this practice is common for Directors of departments in television and was exercised by the Plaintiff in the past while Casting Director of "Army Wives".

20.     Most of Mr. Sefick's work in the entertainment business both affiliated with the series "Army Wives" and during the off season between years 2009-2012 were obtained as a result of the Plaintiff.

21.     Notably Plaintiff was able to get Mr. Sefick work on the credits he enjoys in a short titled "Toogoodoo" in 2011 and another project film titled "Angel Camouflaged" in 2010.  In both of those projects, Mr Sefick worked as Plaintiff's assistant.

22.     Mr. Sefick's was trained by the Plaintiff in nearly every aspect of the casting department.

23.     Upon information and belief, Plaintiff alleges that Mr. Sefick had requested a change in title as Casting Director to Producer.

24.     In or around May 13, 2011, Barbara D'Alessandro sent an email, deliberately keeping the Plaintiff off the list of recipients, to Karen Noble, Manager of Casting for Touchstone and ABC in Burbank, California, and Audrey Gelb, Vice President of Production for Touchstone and ABC in Burbank, California.  Upon information and belief, during this time frame Karen Noble was transitioning positions to Orlando, Florida, during this time frame and Ms. D'Alessandro also involved Sandy Logan, from ABC Defendant.

25.     That around this time frame, Mr. Sefick approached the Plaintiff stating he had earned the change in title of Casting Director.

26.     Plaintiff had discussions with Ms. D'Alessandro where he was asked about his thoughts about Mr. Sefick sharing the title of Casting Director.  Plaintiff mentioned to Ms. D'Alessandro that he was uncomfortable with the idea and needed to think about it. Ms. D'Alessandro also stated there was only one position in the budget and if the title was shared the Plaintiff's salary would have to be reduced.

27.     Plaintiff understands, as television industry convention, the title of Casting Director is not shared and in the rare occasions it is shared, it is either because a company hired to run casting has two individuals who share the work and credit of Casting Director.  The other occasion when a credit of Casting Director is shared it will usually involve the death or illness of the initial Casting Director whose job is completed by a replacement.

28. Plaintiff also discussed this with Sandy Logan at ABC Studios who confirmed there was only one position budgeted for Army Wives the series. This meant if the title was shared the salary would be shared.

29. Plaintiff never agreed to share the title with Mr. Sefick in running the Casting Department and made Ms. D'Alessandro aware of this in the May 2011 timeframe when this first came up.

30. Plaintiff's position on this issue remained consistent up to the time of Plaintiff's firing as Casting Director in Army Wives.

31. On or about May 15, 2011, and going forward, Mr. Sefick requested the Plaintiff give him the credit of casting director.

32. During Season 6 in 2012, this topic would periodically come up from Mr. Sefick, but he continued to work as Plaintiff's assistant in the Casting department under Plaintiff's supervision.

33. At the conclusion of Season 6 of Army Wives, it was not certain the series would continue for another season.

34. In August of 2012, Ms. D'Alessandro informed Plaintiff the season was to continue and he was asked to continue as Casting Director. She informed Plaintiff she wanted to discuss Mr. Sefick's role again.

35. During the course of one  these conversations, Ms. D'Alessandro's stated: "I think at your age you should be concerned about your legacy."

36. After discussion, Ms. D'Alessandro then told Plaintiff that Plaintiff needed to handle the issue with Mr. Sefick regarding Mr. Selfick's role.

37. Plaintiff had a conversation over the phone with Mr. Sefick on Wednesday, September 26, 2012, and informed Mr. Sefick that his services were

no longer required since there was no need for two casting directors and as head of the department Plaintiff was not willing to share his position.

38.     Plaintiff exercised his authority within the scope of his responsibility as Casting Director in the casting department.

39.     Ms. D'Alessandro then inquired of Plaintiff as to how he handled the matter with respect to Mr. Selfick's role, and Plaintiff sent a full description of how Plaintiff handled the situation.

40.     Ms. D'Alessandro then requested an in-person meeting with Plaintiff.

41.     Ms. D'Alessandro then told Plaintiff that she was letting him go and Mr. Sefick would be taking his Casting Director position.

42.     Plaintiff was never informed that he had to either share credit with Mr. Sefick or loose his job.  Instead, Ms. D'Alessandro replaced Plaintiff with a younger person trained by Plaintiff with a significant gap in experience and age.

43.     Upon information and belief, Ms. D'Alessandro had authority from the Defendants out of the Burbank, California office to terminate Plaintiff's position and obtained such by falsely stating that Plaintiff agreed with her that Mr. Sefick should share his position.

44.     At no time did the Plaintiff agree that Mr. Sefick should share in his position as "Casting Director."

45.     Plaintiff was terminated and discriminated against because of his age and any other stated reasons for his termination were a pretext.

///

///

First Cause of Action for Disparate Treatment Under the ADEA

(Against All Defendants)

46.     Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs, 1 through 45, of this Complaint as if fully set forth herein.

47.     Defendants, and each of them, discriminated against Plaintiff by stripping Plaintiff of his area of responsibility in supervising employees in his department, including hiring and firing the employees in his department.

48.     Defendants discriminated against and terminated Plaintiff because of Plaintiff's age, and manifested this intent when Ms. D'Alessandro stated to the Plaintiff at the time of Plaintiff's firing, "I think at your age you should be concerned about your legacy."

49.     After Plaintiff's six seasons of working on a successful television series, Army Wives, there were no other reasonable factors or neutral criteria to terminate the Plaintiff.  The stated reason that Plaintiff was terminated, because of the failure to share credit and position and take a reduction of pay, was a pretext.

50.     As a result of the Defendants' discriminatory acts, Plaintiff is entitled to compensatory damages, liquidated damages, attorney's fees, costs of litigation, and any other relief authorized by law the Court deems appropriate.

WHEREFORE, Plaintiff prays that this Court enter Judgment against Defendants, and each of them, as follows:

   a. An award of Plaintiff's actual damages for loss of wages, benefits, and promotional opportunities, including an award of back pay for all lost

wages, and front pay compensating Plaintiff for loss of future wages and benefits;

b. An award of liquidated damages;

c. An award of attorney fee's and costs of suit; and

d. Such other and further relief as the Court deems just and proper.

DATED: April 14, 2014                  BARTSCH & HAVEN

                                        By:
                                           Peter T. Haven
                                           Attorneys for Plaintiff Richard Futch

## Demand for Jury Trial

Plaintiff demands a trial by jury as to all claims triable by jury.

DATED: April 14, 2014                  BARTSCH & HAVEN

                                        By:
                                           Peter T. Haven
                                           Attorneys for Plaintiff Richard Futch

Richard Futch

v.

ABC Studios; Touchstone Television Productions, LLC; The Walt Disney Company; and Does
1 – 10, inclusive, etc., et al.


United States District Court, Central District of California


# Exhibit 1

As of August 15, 2006

John Richard Futch
1107 Ventura Place
Mt. Pleasant, South Carolina 29464

**RE   "Army Wives" – Richard Futch - CASTING SERVICES**

Dear Mr. Futch:

The following will confirm the terms and conditions of the agreement dated as of the date hereof (the "Agreement") between TOUCHSTONE TELEVISION PRODUCTIONS, LLC ("Touchstone") and RICHARD FUTCH ("Artist") in connection with Artist's personal casting director services for Touchstone's proposed one (1) hour television pilot tentatively entitled "ARMY WIVES" (the "Picture"). In consideration of the mutual covenants and agreements set forth herein, Touchstone and Artist hereby agree as follows:

1.    **PICTURE SERVICES.**

(a)    Touchstone hereby employs Artist, and Artist hereby accepts such employment to render Artist's personal services as a casting director as required by Touchstone to cast such roles for the Picture as Touchstone designates in its sole discretion. Artist's services will commence on such date(s) as Touchstone designates in its sole discretion, and Touchstone will have the right to extend such engagement on a working-week-to-working-week basis for such period(s) as Touchstone designates in its sole discretion. As used herein, the term "working week" means a week during which Artist is not on vacation or hiatus and during which Artist actually renders services hereunder. In this regard, the scheduling and duration of any vacation or hiatus period during the Term (as defined below) will be determined by Touchstone in its sole discretion. Artist's services hereunder will be rendered at such times and location(s) as Touchstone designates in it sole discretion.

(b)  Artist's services hereunder will be those customarily rendered by casting directors in the motion picture and television industry, including without limitation the following: (i) all services required to cast such Screen Actors Guild roles in the Picture as Touchstone designates in its sole discretion; (ii) arrangement of interviews with performers for the individual producer(s) and creative executive(s) assigned to the Picture; (iii) if Touchstone requires, negotiation, subject to Touchstone's prior written approval, of salary, billing and special provisions with each performer; (iv) clearance of all performers with the Screen Actors Guild;

12

(v) preparation of all deal memos and contracts required by Touchstone; (vi) assistance in obtaining execution by performers of all contracts and required tax and immigration documents; (vii) giving work calls, as required by Touchstone; and (viii) consultation with Touchstone regarding casting as Touchstone requires and (ix) if Touchstone employs an assistant for Artist, supervising the assistant and verifying timesheets (including hours worked) submitted by such assistant to Touchstone. All results and proceeds of Artist's services hereunder are on a work-made-for-hire basis and will be solely owned by Touchstone. During the Term, Artist's services under this Agreement will be rendered on a first-call, first-priority basis and will conform in all respects to Touchstone's Day and Freelance Performer Casting and Credit Policies (the "Policies"), which Artist acknowledges may be revised from time to time and, as may be revised, are incorporated herein by this reference. A copy of the current Policies is attached hereto as Exhibit A. Without limiting the foregoing, Artist will not render services to any third party or on Artist's own behalf which might or will interfere in any way with Artist's obligations or services under this Agreement.

2.    **SERIES OPTIONS.** Touchstone will have three (3) separate, independent, irrevocable and exclusive options to employ Artist to render services as a casting director during the first (1st), second (2nd), and third (3rd) production years, respectively, in connection with episodes of any series based on the Picture as cast by Artist (the "Series") as Touchstone designates in its sole discretion ("Series Option(s)"). Touchstone will exercise the first (1st) such Series Option, if at all, by written notice to Artist on or before the commencement date of principal photography of the initial episode of the Series (excluding the Picture and all other pilot episodes) which Touchstone produces during such first (1st) production year. Touchstone will exercise the second (2nd) such Series Option, if at all, by written notice to Artist at any time on or before June 30th of the first (1st) production year of the Series. Touchstone will exercise the third (3rd) such Series Option, if at all, by written notice to Artist at any time on or before June 30th of the second (2nd) production year of the Series. If Touchstone exercises a Series Option hereunder, (a) Artist's services will commence on such date(s) and will be rendered by Artist at such times and location(s) as Touchstone designates in its sole discretion; and (b) Artist agrees to render all of Artist's services hereunder as a casting director (including without limitation all services customarily rendered by casting directors in the motion picture and television industry and all services set forth in Paragraph 1 above) required by Touchstone in connection with the Series upon all of the terms and conditions herein.

3.    **TERM.** The term of the Agreement (the "Term") will commence as of the date hereof and will continue through the later of delivery of the Picture to the applicable network or Artist's completion of all of Artist's services hereunder in connection with the Picture, unless Touchstone exercises a Series

2

Option hereunder, in which event through expiration of the last production year of the Series for which Touchstone exercises a Series Option hereunder.

4.   **COMPENSATION**.  On the conditions that Touchstone employs Artist to render Artist's services hereunder, Artist is not in default or otherwise in breach hereof, Artist executes and delivers this Agreement to Touchstone, and Artist renders and fully completes all of Artist's services hereunder, Touchstone will pay Artist, with respect to Artist's casting services in connection with the Picture, and, if applicable, the Series, in full consideration of all services rendered by Artist, all rights now or hereafter to be granted or otherwise acquired by Touchstone and all of the representations, warranties and agreements of Artist hereunder, the following compensation if and as applicable:

(a)   Picture.

(i)   With respect to Artist's casting services in connection with the Picture pursuant to Paragraph 1 above, on the condition that Artist renders and fully completes all such services, Touchstone will pay Artist compensation for Artist's services in the amount of Two Thousand Five Hundred Dollars ($2,500) per working week payable as follows:  Artist's fee shall be paid on a weekly basis (excluding any hiatus periods and pro rata for any period less than one week); provided that the final weekly payment will be due promptly following the later of the last week of production on the Picture or execution of the long form agreement.

(ii)   Notwithstanding any other provision under this Agreement, if Touchstone fails to enter into a firm, written, noncontingent license agreement with a U.S. national, commercial, free television network in connection with the Picture and/or does not produce the Picture pursuant to such license agreement, Touchstone will have the right, without limiting any other rights and remedies hereunder or at law or in equity, to terminate this Agreement and any or all of Touchstone's obligations hereunder (including without limitation any obligation to employ Artist to render services, to pay compensation to Artist or to accord Artist credit); provided, however, that if Touchstone exercises such termination right, all of Touchstone's rights under this Agreement (other than the right to require Artist to render additional services) will survive such termination and Artist will be entitled to retain or receive, as applicable, any compensation paid or payable by Touchstone and earned in connection with any services actually rendered by Artist prior to such termination.

(b)    **Series - Year One.**  If Touchstone exercises its applicable Series Option pursuant to Paragraph 2 above, Touchstone shall pay Artist One Thousand Five Hundred Dollars ($1,500) for each such episode (excluding the Picture) of the Series for which Artist renders and fully completes all of Artist's services hereunder during the first (1st) production year of the Series.  Artist's applicable episodic fee shall be paid weekly (excluding hiatus periods and pro rata for any period less than one week), based upon Touchstone's anticipated production schedule for the Series for the first production year, as determined by Touchstone in its sole discretion, provided that Artist's final weekly payment will be payable promptly following the later of the final production week of the first production year of the Series or execution of this Agreement; and provided further that Artist's total compensation for such production year shall not exceed the applicable episodic fee pursuant to the Agreement, multiplied by the total number of episodes of the first production year of the Series for which Artist renders and fully completes Artist's services hereunder and pursuant to the Agreement.

(c)    **Series - Year Two.**  If Touchstone exercises its applicable Series Option hereunder pursuant to Paragraph 2 above, Touchstone shall pay Artist One Thousand Five Hundred Seventy Five Dollars ($1,575) for each such episode of the Series for which Artist renders and fully completes all of Artist's services hereunder during the second (2nd) production year of the Series.  Artist's applicable episodic fee shall be paid weekly (excluding hiatus periods and pro rata for any period less than one week), based upon Touchstone's anticipated production schedule for the Series for the second production year, as determined by Touchstone in its sole discretion, provided that Artist's final weekly payment will be payable promptly following the later of the final production week of the second production year of the Series or execution of this Agreement; and provided further that Artist's total compensation for such production year shall not exceed the applicable episodic fee pursuant to the Agreement, multiplied by the total number of episodes of the second production year of the Series for which Artist renders and fully completes Artist's services hereunder and pursuant to the Agreement.

(d)    **Series - Year Three.**  If Touchstone exercises its applicable Series Option hereunder pursuant to Paragraph 2 above, Touchstone shall pay Artist One Thousand Six Hundred Fifty Three Dollars and Seventy Five Cents ($1,653.75) for each such episode of the Series for which Artist renders and fully completes all of Artist's services hereunder during the third (3rd) production year of the Series.  Artist's applicable episodic fee shall be paid weekly (excluding hiatus periods and pro rata for any period less than one week), based upon Touchstone's anticipated production schedule for the Series for the third production year, as determined by Touchstone in its sole discretion, provided that Artist's

4

final weekly payment will be payable promptly following the later of the final production week of the third production year of the Series or execution of this Agreement; and provided further that Artist's total compensation for such production year shall not exceed the applicable episodic fee pursuant to the Agreement, multiplied by the total number of episodes of the third production year of the Series for which Artist renders and fully completes Artist's services hereunder and pursuant to the Agreement.

(e)     The compensation payable to Artist pursuant to this Paragraph 4 will be in respect of any and all uses of the Picture, the Series, and all elements of the foregoing in any and all media, whether now known or hereafter developed, throughout the universe, in perpetuity, in all languages, in all versions (including without limitation digitized versions) and for any and all purposes, including, without limitation, all replays, broadcasts in any foreign area, theatrical exhibitions and exhibitions in any supplemental market, and constitutes an all-inclusive flat fee and no additional compensation shall be payable to Artist for Artist's services hereunder by reason of overtime, weekend work, holidays, nights, and the like.

5.     **CREDIT.**  On the condition that Artist is not in default or otherwise in breach hereof, and subject to network and guild restrictions and approvals, Touchstone will accord Artist credit substantially in the form "Location by Richard Futch" on the screen, on a shared card in the end titles of the Picture and each episode of the Series for which Artist renders and fully completes all of Artist's services hereunder.

All other matters relating to credit will be determined by Touchstone in its sole discretion.  No casual, inadvertent or unintentional failure by Touchstone to comply with the credit provisions hereof (by reason of shortage of time or otherwise) nor any failure by any third party to comply with such credit provisions will constitute a breach by Touchstone of this Agreement.

6.     **OFFICE/EXPENSES**.  On the conditions that Artist executes and delivers to Touchstone this Agreement and Artist is not in default or otherwise in breach of this Agreement, Touchstone will provide Artist an office in accordance with Touchstone's then-current policies during the period Artist is rendering casting services in connection with the Picture and, if applicable, the Series, and promptly following Touchstone's receipt and verification of evidence satisfactory to Touchstone of Artist's payment thereof, Touchstone will reimburse Artist for: (i) Artist's customary and reasonable out-of-pocket expenses for long-distance phone calls, messengers and photocopies which have been incurred directly in connection with Artist's casting services hereunder in accordance with Touchstone's then-current policies; and (ii) the reasonable cost of engaging a payroll company to act as a payroll agent on

5

behalf of Artist and any other individual(s) that Touchstone requires Artist to engage under this Agreement.

7. **CASTING ASSISTANT.** On the conditions that Artist delivers to Touchstone this Agreement and is not in breach or otherwise in default of this Agreement, promptly following Touchstone's receipt and verification of evidence satisfactory to Touchstone of Artist's payment thereof, Touchstone will reimburse Artist for the out-of-pocket salary paid by Artist for a casting assistant rendering services exclusively on the Picture, and, if applicable, the Series, during any period hereunder that Artist is rendering services, it being understood and agreed that in no event will Touchstone's reimbursement exceed Five Hundred Dollars ($500) per working week, prorated for any lesser period based on a five day work week, and any minimum contributions required by the applicable collective bargaining agreement made on behalf of any casting assistant that Artist engaged to render exclusive services on the Picture, and, if applicable, the Series, to the Motion Picture Industry Pension Plan, the Motion Picture Industry Individual Account Plan and the Motion Picture Industry Health Plan.

8. **PUBLICITY.** Artist agrees that Artist, as well as Artist's agents and representatives, will not without Touchstone's express prior written consent in each instance, issue or authorize the issuance of any press release, news story or any other publicity relating to this Agreement or any use by Touchstone, its successors, licensees or assigns of any of the rights granted to Touchstone under this Agreement, or discuss any of the terms or provisions of this Agreement with representatives of the media; provided, however, that at any time following Touchstone's initial press release concerning the foregoing, Artist and/or Artist's representative(s) may make incidental, non-derogatory and non-confidential references pertaining primarily to Artist.

9. **NOTICES.** Touchstone's and Artist's respective addresses for notice purposes will be as set forth below:

To Touchstone:     Touchstone Television Productions, LLC
                   500 South Buena Vista Street
                   Burbank, California 91521-4714
                   Attention:   Executive Vice President
                                Business and Legal Affairs

To Artist:         John Richard Futch
                   1107 Ventura Place
                   Mt. Pleasant, South Carolina 29464

10. **IMMIGRATION VERIFICATION.** Notwithstanding any other provision under this Agreement, Artist acknowledges that any offer of engagement or employment hereunder is subject to and contingent upon

6

Artist's ability to prove Artist's identity and employment eligibility as required by the Immigration Reform and Control Act of 1986, as amended.  Accordingly, Artist hereby agrees to: (a) complete accurately and truthfully and to sign Section 1 ("Employee Information and Verification") of an Employment Eligibility Verification ("Form I-9") at the time of Artist's execution of this Agreement or commencement of services, whichever is earlier, and (b) deliver, in person, to Touchstone said Form I-9, together with documentation of Artist's employment eligibility, within three (3) business days of Artist's execution of this Agreement or commencement of services, whichever is earlier.  If Artist fails to complete and deliver the Form I-9 as provided above, Touchstone will have the right, by notice to such effect given to Artist, to terminate this Agreement and thereupon Artist's employment hereunder will cease and terminate and no party will have any right, duty or obligation to the others under the Agreement except such as will have accrued prior to the effective date of termination.

11. **EQUITABLE RELIEF.**

(a)     Artist acknowledges that the services to be rendered by Artist hereunder are of a special, unique, unusual, extraordinary and intellectual character that gives them a peculiar value, the loss of which Touchstone cannot be reasonably or adequately compensated in damages, and that a breach by Artist of any provision of this Agreement will cause Touchstone irreparable injury and damage.  Accordingly, Artist expressly agrees that Touchstone will be entitled to injunctive and other equitable relief to prevent a breach of this Agreement or any part thereof by Artist and to secure its enforcement.  Artist acknowledges that Touchstone has complied with the minimum compensation requirements of California Civil Code Section 3423 and California Code of Civil Procedure Section 526 with respect to such injunctive relief.

(b)     Artist acknowledges that, in the event of any breach of this Agreement by Touchstone or any third party, the damage, if any, caused Artist thereby will not be irreparable or otherwise sufficient to entitle Artist to seek injunctive or other equitable relief.  Artist acknowledges that Artist's rights and remedies in any such event will be strictly limited to the right, if any, to recover damages in an action at law, and Artist will not have the right to rescind this Agreement or any of Touchstone's rights hereunder, nor the right to enjoin the production, exhibition or other exploitation of the Picture and/or Series, any episode or element thereof, any subsidiary or allied rights with respect thereto, or any other results and proceeds of Artist's services hereunder, nor will Artist have the right to terminate Artist's services or obligations hereunder by reason of such breach.  Without limiting the foregoing or Touchstone's other rights under this Agreement or at law or in equity, under no circumstances will any act or omission of Touchstone which would

7

otherwise constitute a breach or alleged breach of this Agreement be deemed such unless Artist notifies Touchstone in writing setting forth in detail the basis for such breach or alleged breach and Touchstone fails to commence reasonable efforts to cure such breach or alleged breach within thirty (30) days of Touchstone's receipt of such notice.

12. **MOTION PICTURE PLAN CONTRIBUTIONS.** On the conditions that Artist executes and delivers this Agreement to Touchstone and is not in default or otherwise in breach of this Agreement, Touchstone will make the applicable minimum contributions on behalf of Artist to the Motion Picture Industry Pension Plan, the Motion Picture Industry Individual Account Plan and the Motion Picture Industry Health Plan, as same may be required under any collective bargaining agreement having jurisdiction over Artist's services under this Agreement.

13. **STANDARD TERMS AND CONDITIONS.** The balance of the terms and conditions of this Agreement consist of Touchstone's Standard Terms and Conditions (the "Standard Terms") attached hereto as Exhibit B and incorporated herein by this reference. Without limiting the generality of the foregoing, and notwithstanding anything to the contrary set forth in this Agreement, all of Touchstone's obligations hereunder, including without limitation any obligation to employ Artist to render services, to pay compensation to Artist or to accord Artist credit, are subject to the Standard Terms as applicable. In the event of any conflict between the foregoing provisions of this Agreement and the applicable provisions of the Standard Terms, the foregoing provisions of this Agreement will govern.

If the foregoing correctly sets forth your understanding of the agreement between Touchstone and Artist, please so indicate by signing in the spaces provided below.

TOUCHSTONE TELEVISION
PRODUCTIONS, LLC

By: _____

Its: _____

**ACCEPTED AND AGREED TO:**

_____
JOHN RICHARD FUTCH
Social Security No.: 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

8

19

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge _____Michael W. Fitzgerald_____ and to Magistrate Judge _____Frederick F. Mumm_____ .

The case number on all documents filed with the Court should read as follows:

## 2:14-cv-02854-MWF(FFMx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the assigned Magistrate Judge has been designated to hear discovery-related motions.  All discovery-related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

_____April 14, 2014_____  By  APEDRO_____
Date                          Deputy Clerk

## ATTENTION

*A copy of this Notice must be served on all parties served with the Summons and Complaint (or, in cases removed from state court, on all parties served with the Notice of Removal) by the party who filed the Complaint (or Notice of Removal).*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| Richard Flutch, | | CASE NUMBER |
|---|---|---|
| | | 2:14-cv-02854-MWF(FFMx) |
| | PLAINTIFF(S) | |
| ABC Studios, et al., | v. | |
| | | **NOTICE TO PARTIES OF COURT-DIRECTED ADR PROGRAM** |
| | DEFENDANT(S) | |

**NOTICE TO PARTIES:**

It is the policy of this Court to encourage settlement of civil litigation when such is in the best interest of the parties. The Court favors any reasonable means, including alternative dispute resolution (ADR), to accomplish this goal. *See* Civil L.R. 16-15. Unless exempted by the trial judge, parties in all civil cases must participate in an ADR process before trial. *See* Civil L.R. 16-15.1.

The district judge to whom the above-referenced case has been assigned is participating in an ADR Program that presumptively directs this case to either the Court Mediation Panel or to private mediation. *See* General Order No. 11-10, §5. For more information about the Mediation Panel, visit the Court website, www.cacd.uscourts.gov, under "ADR."

Pursuant to Civil L.R. 26-1(c), counsel are directed to furnish and discuss with their clients the attached ADR Notice To Parties *before* the conference of the parties mandated by Fed.R.Civ.P. 26(f). Based upon the consultation with their clients and discussion with opposing counsel, counsel must indicate the following in their Joint 26(f) Report: 1) whether the case is best suited for mediation with a neutral from the Court Mediation Panel or private mediation; and 2) when the mediation should occur. *See* Civil L.R. 26-1(c).

At the initial scheduling conference, counsel should be fully prepared to discuss their preference for referral to the Court Mediation Panel or to private mediation and when the mediation should occur. The Court will enter an Order/Referral to ADR at or around the time of the scheduling conference.

Clerk, U. S. District Court

April 14, 2014
_____
Date

By  APEDRO
_____
Deputy Clerk

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### NOTICE TO PARTIES: COURT POLICY ON SETTLEMENT
### AND USE OF ALTERNATIVE DISPUTE RESOLUTION (ADR)
Counsel are required to furnish and discuss this Notice with their clients.

Despite the efforts of the courts to achieve a fair, timely and just outcome in all cases, litigation has become an often lengthy and expensive process. For this reason, it is this Court's policy to encourage parties to attempt to settle their disputes, whenever possible, through alternative dispute resolution (ADR).

ADR can reduce both the time it takes to resolve a case and the costs of litigation, which can be substantial. ADR options include mediation, arbitration (binding or non-binding), neutral evaluation (NE), conciliation, mini-trial and fact-finding. ADR can be either Court-directed or privately conducted.

The Court's ADR Program offers mediation through a panel of qualified and impartial attorneys who will encourage the fair, speedy and economic resolution of civil actions. Panel Mediators each have at least ten years of legal experience and are appointed by the Court. They volunteer their preparation time and the first three hours of a mediation session. This is a cost-effective way for parties to explore potential avenues of resolution.

This Court requires that counsel discuss with their clients the ADR options available and instructs them to come prepared to discuss the parties' choice of ADR option (settlement conference before a magistrate judge; Court Mediation Panel; private mediation) at the initial scheduling conference. Counsel are also required to indicate the client's choice of ADR option in advance of that conference. *See* Civil L.R. 26-1(c) and Fed.R.Civ.P. 26(f).

Clients and their counsel should carefully consider the anticipated expense of litigation, the uncertainties as to outcome, the time it will take to get to trial, the time an appeal will take if a decision is appealed, the burdens on a client's time, and the costs and expenses of litigation in relation to the amounts or stakes involved.

With more than 15,000 civil cases filed in the District in 2012, less than 1 percent actually went to trial. Most cases are settled between the parties; voluntarily dismissed; resolved through Court-directed or other forms of ADR; or dismissed by the Court as lacking in merit or for other reasons provided by law.

For more information about the Court's ADR Program, the Mediation Panel, and the profiles of mediators, visit the Court website, www.cacd.uscourts.gov, under "ADR."

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Central District of California ☑

RICHARD FUTCH

)
)
)
)

Plaintiff(s)

v.         TELEVISION

ABC STUDIOS; TOUCHSTONE PRODUCTIONS,
LLC; THE WALT DISNEY COMPANY;  AND DOES
1 - 10, INCLUSIVE;

)
)
)
)
)
)
)
)

Civil Action No.

**CV14-02854**-*MWF (FFMx)*

Defendant(s)

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Peter T. Haven, Esq.
BARTSCH & HAVEN
317 Rosecrans Avenue
Manhattan Beach, California  90266

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

CLERK OF COURT

Date:   4/14/2014

Signature of Clerk or Deputy Clerk

1202

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

| I. (a) PLAINTIFFS ( Check box if you are representing yourself ☐ ) | DEFENDANTS ( Check box if you are representing yourself ☐ ) |
|---|---|
| RICHARD FUTCH | ABC STUDIOS; TOUCHSTONE TELEVISION PRODUCTIONS, LLC; THE WALT DISNEY COMPANY; AND DOES 1 - 10, INCLUSIVE; |

| (b) County of Residence of First Listed Plaintiff   Charleston, SC | County of Residence of First Listed Defendant   Los Angeles, CA |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |

| (c) Attorneys (*Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information. | Attorneys (*Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information. |
|---|---|
| Peter T. Haven (CA SBN 175048) 317 Rosecrans Avenue, Manhattan Beach, California 90266 Tel: (310) 939-1098; Fax: (310) 546-4033 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☒ 3. Federal Question (U.S. Government Not a Party)

☐ 2. U.S. Government Defendant

☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding
☐ 2. Removed from State Court
☐ 3. Remanded from Appellate Court
☐ 4. Reinstated or Reopened
☐ 5. Transferred from Another District (Specify)
☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No   (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No    ☒ **MONEY DEMANDED IN COMPLAINT:** $ According to proof.

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
29 U.S.C. 621 et seq.: Violation of Age Discrimination in Employment Act.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | ☐ 196 Franchise | ☐ 362 Personal Injury-Med Malpratice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| | **REAL PROPERTY** | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/ Accommodations | ☐ 740 Railway Labor Act | |
| | ☐ 220 Foreclosure | | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 446 American with Disabilities-Other | ☒ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

| FOR OFFICE USE ONLY: | Case Number: | CV14-02854 |
|---|---|---|

CV-71 (11/13)                                      CIVIL COVER SHEET                                      Page 1 of 3

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII.  VENUE:** Your answers to the questions below will determine the division of the Court to which this case will most likely be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| Question A: Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| ☐ Yes   ☒ No | ☐ Los Angeles | Western |
| If "no," go to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| Question B: Is the United States, or one of its agencies or employees, a party to this action? | If the United States, or one of its agencies or employees, is a party, is it: | | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
| ☐ Yes   ☒ No | **A PLAINTIFF?**<br>Then check the box below for the county in which the majority of DEFENDANTS reside. | **A DEFENDANT?**<br>Then check the box below for the county in which the majority of PLAINTIFFS reside. | |
| If "no," go to Question C. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Los Angeles | ☐ Los Angeles | Western |
| | ☐ Ventura, Santa Barbara, or San Luis Obispo | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | ☐ Riverside or San Bernardino | Eastern |
| | ☐ Other | ☐ Other | Western |

| Question C: Location of plaintiffs, defendants, and claims? (Make only one selection per row) | A.<br>Los Angeles County | B.<br>Ventura, Santa Barbara, or San Luis Obispo Counties | C.<br>Orange County | D.<br>Riverside or San Bernardino Counties | E.<br>Outside the Central District of California | F.<br>Other |
|---|---|---|---|---|---|---|
| Indicate the location in which a majority of plaintiffs reside: | ☐ | ☐ | ☐ | ☐ | ☐ | ☒ |
| Indicate the location in which a majority of defendants reside: | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Indicate the location in which a majority of claims arose: | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |

| C.1. Is either of the following true? If so, check the one that applies: | C.2. Is either of the following true? If so, check the one that applies: |
|---|---|
| ☐ 2 or more answers in Column C | ☐ 2 or more answers in Column D |
| ☐ only 1 answer in Column C and no answers in Column D | ☐ only 1 answer in Column D and no answers in Column C |
| Your case will initially be assigned to the SOUTHERN DIVISION.<br>Enter "Southern" in response to Question D, below.<br>If none applies, answer question C2 to the right. ➡ | Your case will initially be assigned to the EASTERN DIVISION.<br>Enter "Eastern" in response to Question D, below.<br>If none applies, go to the box below. ⬇ |

| Your case will initially be assigned to the<br>WESTERN DIVISION.<br>Enter "Western" in response to Question D below. |
|---|

| Question D: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, or C above: ➡ | Western Division |

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**IX(a). IDENTICAL CASES**: Has this action been previously filed **in this court** and dismissed, remanded or closed?   ☒ NO   ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES**: Have any cases been previously filed **in this court** that are related to the present case?   ☒ NO   ☐ YES

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**X. SIGNATURE OF ATTORNEY
(OR SELF-REPRESENTED LITIGANT):** _____   DATE: April 14, 2014

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 193SFF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |